If both parties that are going to argue, attorneys, if you would step up for the record and identify yourselves, please. I'm Todd McHenry and I represent Daniel Rodriguez, the petitioner. Good morning. Good morning. Janet Mahoney on behalf of the people of the state of Illinois. Good morning to both of you. We will allow each side approximately 15 minutes or so, or 20, and from that, Mr. McHenry, you may save out some time for rebuttal. May it please the court, with the court's permission, I'd like to reserve two minutes for rebuttal. Certainly. There are two issues pending before the court. The first being whether or not Daniel Rodriguez has made a substantial showing that his trial attorney was ineffective. The second issue deals with the propriety of the 45-year sentence as applied to a 15-year-old at the time of the incident. I'd like to focus on the first issue solely, although I'm happy to answer any questions regarding both issues. The first issue? Yeah, the ineffective assistance of counsel. Not the second? That was my intention. I'm happy to answer questions as to both. All right. Well, I think you should address both, particularly the second issue regarding the sentence. In fact, I even say that that should be your focus. Okay. I would like to address the first issue. Yes, and I'm not foreclosing either. I just think we want to hear about both. Okay. All right? Turning to the first issue, trial counsel in this case refused to investigate a witness who would have corroborated what Daniel Rodriguez initially told police, which was that he could not have been the shooter because he was at a meeting approximately two and a half miles away from the scene at the time of the shooting. Counsel's expressed reason was because that alibi testimony would have put him at a gang meeting and didn't want evidence of a gang meeting to come in. So was that not trial strategy? For two reasons, I don't believe that was certainly sound trial strategy. The first one is that to exercise sound trial strategy, an attorney needs to first do at least an adequate inquiry or investigation into the facts. So in this case, as a preliminary matter, there was no judging the affidavits as true at second stage as we must. There was no effort at all to contact this witness because of this reason. That could not have been objectively reasonable because, you know, one, you've got a 15-year-old facing a 45-year sentence. And, you know, to not investigate somebody who would have corroborated the same alibi that he gave police initially, and this was not a case where he said one thing to police and then, you know, years later we're getting evidence that, oh, there was an alibi. This is what he said straight away. So for a trial to be- Would it have made a difference in this case with all of the testimony and evidence that pointed to this defendant? I mean, how would that make a difference? I believe it would. I mean, first, if we look at, you know, what would be the evidence now on trial, out of the four witnesses that were there at the scene, two of them said they couldn't, at the initial trial, couldn't identify who the shooter was. The other two, both of which were admitted Latin King members, they were, you know, they witnessed a show-up, which was done anywhere from, you know, an hour to an hour and 20 minutes away from the time of the shooting. And of those two, one of them recanted their testimony subsequently. So we're down to now there would be one who would not be impeached at a new trial with subsequent statements. That person, you know, would have been impeached for the fact that it's Joseph Gonzalez. So they can't recant their testimony whenever they get scared? They can, but if the question is what evidence would be presented at a new trial, this one, you would be left- certainly that witness would be impeached by the fact that they recanted their testimony. The second one was Gonzalez is now the only one who hasn't changed the story since trial that we know of. Gonzalez admitted that he lied to the grand jury, denying that he was a member of the gang. So he's already admitted to lying under oath once. He's a convicted felon. When he gave a description of the offender, that description included an age that was anywhere between 18 and 25. Daniel Rodriguez was 15 at the time. He described the shooter ultimately as being of darker complexion, of similar or darker complexion than himself. It was undisputed at trial that Daniel Rodriguez was lighter complected than the witness. So he didn't get the ages near right, didn't get the complexion near right. As far as the remaining evidence, there was evidence of his gunshot residue that was found on Rodriguez's hands. It's undisputed that he was in the car anywhere up to an hour to hour and 20 minutes after the fact. He was driving at that point. The trial evidence was that the shooter was the passenger. So he was arrested in the car that was used, right? That's correct. Okay. Is that evidence of guilt? Well, we know for sure that in this case that he would not have been in the same positions. There were changes in the car, at least as to who was in the car. How about if I say it's that circumstantial evidence of guilt? I wouldn't say that it connects him to the car, but there was a significant change in time. So you've got a shooting that occurred as early as 9 o'clock to as late as 9.30. The arrest occurred at approximately 10.20. So there's a gap between the two. The witnesses described there being at least two people in the car. When Rodriguez was arrested, there was only himself in the car, and he was the driver. The shooter, it was undisputed, was the passenger. The passenger reached over across the driver as the driver put their head back and fired the three to four shots. So as far as how gunshot residue would have gotten on to his hands, he was driving that steering wheel. The gun was fired right in front of the steering wheel. So as the expert testified, it's like baking powder, the gunshot residue. It could have gotten off the hands. If you're driving that steering wheel where a gun was just fired, you're going to be touching gunshot residue. So in this case, the question is whether there would be a reasonable probability of success or a different outcome at trial. And there can be no, you know, to basically, I mean, counsel, the best case scenario of counsel's strategy was that it's better to be a murderer than a gang member. I mean, it was undisputed that this was a gang case in the beginning. As Your Honor wrote on direct appeal, there was evidence from Ortiz that the defendant made a statement indicating that he had some business to take care of based on a conflict the night before. So in all of the state's witnesses, the eyewitnesses admitted that they were gang members. So this was a gang case to try to shield the jury from this fact at the exclusion of presenting a defense that was consistent with what he told police is not objectively reasonable. Was his statement to the police that he was in a meeting? Was that just the word? The state's attorney conceded that his defense, that his alibi defense was consistent with being at this junta, a group meeting somewhere on 99th and Ewing. Did he use that word? That's my understanding, or it was at least consistent with that. Isn't that a terminology for like a gang meeting? That's my understanding, yes. And didn't the trial judge go over this whole thing about the alibi with the lawyer and the defendant? The trial judge did go over it. When they went over it, counsel then ultimately amended the answer to include this alibi defense, and the prosecutor admitted that it's consistent with what he told police, so they were on knowledge of what the contents would have been. But the person was never – she didn't actually know him, right? She said that she saw him at 99th and – She said she was at that meeting from 9 o'clock to 10.30. He was also at that meeting, but there was no – from the affidavit, there's no connection between the two as far as like personal relationship or anything. All right. So, well, how about let's talk about the sentencing issue. I mean, the issue is currently pending in the Illinois Supreme Court verdict, people versus buffer. And would you agree that – let's say, for example, buffer says that a 45-year sentence is a mandatory life. De facto. Okay. And so – and the state is obviously opposing that. And buffer has been – has it been fully briefed but not set for orals yet? It's not fully briefed. It's not fully briefed? No, the state has filed a brief, and the defendant has not filed theirs yet. Okay. So – oh, so it's really not ready to maybe be sent. When is the defense brief due? I know – I believe that defense counsel filed in one extension. I'm not sure what the actual date is, but I know that I talked to the attorney, and they're beginning to work on it now. So if we were to stay this matter, would you be opposed to that? I mean, we feel like the first issue, you know, we do feel strong about the first issue. We would like that reached. But, yeah, pending, you know, buffer, hopefully – I mean, that deals with a 50-year sentence specifically, but hopefully as the parties are arguing it, it should also address the question of whether or not a 45-year sentence, you know, minimum sentence would be de facto natural life. But regardless, I think that buffer ultimately, you know, will need to weigh in on the court's analysis. Yeah, but isn't this a different issue here? We have a 20-year sentence and then a 45-year sentence. Isn't that quite different? It is – I mean, it is different factually. However, it's still – the legal question of whether or not the 45-year sentence should stand, that should still be reached. That still is a question for the court. I don't know what the posture is. Well, if it's – if you're banking on solely the 45, which I think buffer would support, then what difference does it make about the 20? Well, I think that the – they would definitely be entitled to a new sentencing hearing either way. So to that extent, yes, you know, as to whether – Let me ask you this. Now, this case involves – these are the facts. April 1st of 2000, this shooting occurred, and the defendant was charged. And then about a year later, he was released on bond. I think that's correct. Then in 2004, I think February, he was charged with this other crime. So was he 19 then, or do we know? 2000, he was 15. Correct. So 2004, February, he was either 18 or 19. Right. All right. And apparently, he was arrested almost immediately after another crime, which involved apparently an attempt murder involving a beating. There was no gun involved. Correct. Now, the record doesn't – we don't have any of that, at least the case itself. But apparently, he was given 20 years for the attempt murder. So whatever kind of beating it was, there must have been some finding that he was actually trying to kill someone. Correct. All right. So apparently, a decision was made to try that case first. He was found guilty, and the sentencing judge gave him 20 years. Do you know if it's the same judge? I don't know if it's the same judge, but this judge certainly was aware of that and acknowledged it. All right. So he gets 20 for the attempt murder. Then the state goes to trial on this case, and he's found guilty, and he's given the 45. She says she's giving him the minimum, but she doesn't think he should get the minimum. And I don't know, just off the top of my head, whether she mentioned in her sentencing hearing, and I will find out, about his youth at the time of this offense. Yeah, my understanding, my reading of it was that at the sentencing, the judge said, like, acknowledged that, I hope you have some potential for rehabilitation. I don't know if you can infer from that that that was based on age or not. But it wasn't, to my knowledge, it wasn't expressly. And now that we see this sentencing hearing occurred prior to Roker, to Miller, to all of them. Of course. So I don't believe that, you know, facing the mandatory minimum at that time, much attention would have been given at that time to your. All right. So here's my question. So now this 45 has to be consecutive because of the situation involving the fact that he was released on bond and approximately three years later, well, he was at large for several years. He committed a new crime in 2004. So the 45-year sentence was consecutive because of the statute requiring that if you are found guilty of another crime while you're out on bond for a different crime, you must have a consecutive sentence. So my question, I guess it took me a long time to get here, is this. Does it matter in this case that this really isn't like any of the other cases where the court, certainly our U.S. Supreme Court, where the mandatory life couldn't be imposed for a juvenile convicted of a singular crime? Does it matter at all? I don't know that it, I think that the analysis still has to be on whether or not the 45-year sentence is correct on its own. I mean, factually, this is definitely different, as you're saying, because of this consecutive 20-year sentence. Well, that's why I think this other case is significant, because if the court says that 45 is a de facto life, then, and if that's really solely your argument, I don't know, we still have to get to this point. Is it mandatory life because he committed this singular offense and there's no history of any other background, he didn't commit any other crimes, and so there's sort of a suggestion that there needs to be a finding that this particular youth was incorrigible. Correct. And I'm not saying that having one offense and another means that the person is incorrigible. I'm just saying that is there any impact in this case upon the fact that this other offense, which resulted in the consecutive sentence, which now is 60, what, 65 years instead of the 45? Does it matter that this came about as a result of something entirely different than really any other case that I've seen so far? That's what I'm getting at. Yeah, it would matter insofar as it would certainly be a factor at the new sentencing hearing. So if 45, if Buffer comes down saying that even a 45-year sentence, that that is a de facto natural life, and it goes back to a sentencing hearing, I think at that point the state would be absolutely entitled to argue that, well, in this case the defendant had also committed this one thing, and that would be argued, but there would be other evidence, too, that hasn't been spread of record because… But it's not really any of the other cases, and it's not Miller and Roper or anything else because this is a different situation factually. This is not the same as any of those other cases, and I don't know that it's really been developed at all, but I have certain questions about it, and that's why I'm asking you. No, and, you know… Because does something become mandatory life if it's tacked on? Let's say that 45 isn't mandatory life, and I'm not saying that because the Supreme Court has the issue. If they say it is, well, then I think there's, you know, maybe that resolves part of this. But if they don't say that, what do we do with the case like this? This is not a 45 being imposed for the first time because of a singular event or an offense. I'm not saying there weren't multiple offenses because there were, but do you see what I'm saying? This didn't come about as a result of 20 and 25 mandatory, and there was no other history or anything going on. Right, and he certainly would have received the 45 independent of… Say he had not done anything on bond, right, but had been convicted of this offense. He would have been convicted of something and would have been sentenced to at least 45 years of felony. So that, the 45 years, irrespective of this additional fact, that needs to be dealt with, you know, by this court. But that's actually pending in the Illinois Supreme Court. Correct. That issue is right there. Correct. Absolutely. So should we be predicting or does it, I mean, you would, if you lose, you're going to appeal. If we were to find that 45 is a de facto life, the state is going to take the same position they took in Buffer so that then this case will certainly remain there either on a, you know, PLA just waiting for, you know, Buffer. And in any event, his sentence is significant however we look at it. It is, but, you know, since this notice of appeal doesn't concern that other case, you know, I'm not sure of the status of that other case, and obviously it's been convicted. Well, that's because the attorneys haven't really addressed the issue, not because it isn't in front of us. I mean, it's not here, but at the same time, I have a question. I do. I mean, I would want to know about that other case actually. I mean, if he got a sentence of 20 years for an attempt murder that involved a beating of some kind, it must have been substantial in order to warrant a 20-year sentence. The range is 6 to 30. Was it because of, I mean, I don't think there was any other prior convictions at that point as an adult, or I don't know if there was as a juvenile, because that's not in this record. Right. But, I mean, ultimately our position is that that would be the question for the sentencing court to determine at that point. That would be a factor, and as would be the circumstances of it, that could be a factor that the court would look at as to whether or not this particular juvenile was incorrigible or not. So that ultimately, while those concerns are certainly relevant for what should the end result be for this client, it should be remanded back. If 35 years is a de facto natural life sentence, which he was guaranteed to get in this case after being convicted, it should go back for a new sentencing hearing, at which point the judge would be after Roker and Miller and all these seminal cases, would be now, they would be developing the record to show whether or not this juvenile was incorrigible. But I guess I'm going back to my other question. Miller, Roper, if we look at those facts, we're not going to find a case similar to this case, involving a juvenile who was found guilty as an adult of one crime and then tried five years later for the juvenile offense and sentenced to 45 years. That's my point. Right. It doesn't really like anything that, in any of the cases that I've read. So that's why I'm asking about it. Yeah, I apologize. That's the best I can say is I believe that is a factor that should be addressed by the sentencing court as it's remanded for a sentencing hearing. Well, is your position today that 45 is the mandatory life, or is your position that 20 plus the 45 is a mandatory life? That when a court, is part of your argument that when a court has the, has to sentence someone to 45 years and they've already got 20, and you're talking about the person who committed that offense when they were a juvenile, should that be considered as, you know, a de facto life? That's correct. Yeah, we do argue both. And we know in one of the briefs that the total aggregate sentence would no doubt be a de facto natural life sentence. But also 45 years independent is a de facto natural life as well. Okay. Would you agree that no matter what the Illinois Supreme Court does with the case that they have, that this case is different and it would be a misuse of justice if we didn't rule on this case now? I mean, I believe that, I mean, we have a different opinion on the first issue. I believe that this should go back for an evidentiary hearing at third stage, and then this court could either, you know. I'm only talking about the sentence. I think this court. Has he done 20 years yet? Let's get right to the heart of it. Let's assume it goes back and he has a 20-year sentence for the attempt murder. I don't know if it's day for day. I really don't. I don't know if it's, you know. But then for the other 20, let's say that the sentencing court says, okay, no mandatory add-on. So we have a 40-year sentence. 20 plus 20. The first, this, do we have 20 years yet? I don't believe so. Okay. All right. So that answers my question. We don't have him serving 20 years at this juncture. And we hope, certainly, I think everyone is looking for direction from the Supreme Court on buffer. And that, you know, that should be forthcoming. Because it is a pivotal case in terms of the differences of opinion in the first district. Even, so there's quite a divide. You haven't answered my question. My question is very simple. Should we hold this case and wait for the Supreme Court to rule? Or should we rule on this case now? It's obviously up to this court's discretion. If I were doing it, my inclination would be to do it now. But, you know, we have differences of opinion on the first issue too. So I believe that, you know, it should go back to remand. Because there's no excuse for not interviewing somebody. And let me ask you one other thing. Was there any evidence of rehabilitation potential here? This is one of the cases that, you know, the record is devoid of much. Because this was prior to Graham, to Miller, to all these cases that say this is something that needs to be looked at and litigated. I mean, this is. When we talk about rehabilitation potential, we look about, we look to see if this person would be a repeat offender. Here's somebody who is charged with a murder and he's out on the street and he tries to kill somebody else. So if we put him back on the street, is he going to try to kill somebody else again, no matter how old he is? Well, he has a supportive family and, you know, all of these things need to be developed at a hearing in which that question is pending. But at the sentencing hearing before, nobody thought that that, that there was any room to do anything different. It was a 45-year minimum, which is what the defendant got. So there was not exhaustive evidence presented about, hey, you should really consider he has, you know, a lot of potential. His family is here today. They're supportive. So with that, you know. His family is here to support him, but does he support his family with his conduct? It was, you know, we're talking now 18 years after the incident and, you know, how many years, what, 14 years after the attempt murder. So can somebody change within 14 years? I mean, that's a question that would be discussed and exhausted at a sentencing hearing. So, you know, with that, if there are any further questions, I'll address them. If not, we would ask for this court to remand for an evidentiary hearing and then ultimately rule that the 45-year sentence was de facto natural life. Thank you. Okay. Thank you. Mahoney. Good morning. Assistant State's Attorney Janet Mahoney on behalf of the people. May it please the Court. The 45-year sentence here is not a de facto life sentence, and there has not been a single case that has held 45 years is a de facto life sentence. This case is slightly different than Buffer because in Buffer it was a 50-year sentence and he would not be released until age 66. So are you telling us that we don't consider the 20 years? I'm telling you not to consider the 20 years, and the invitation is in the brief. What authority do you have that says that we should not consider the 20 years? People v. Reyes, in the case where they aggregated the sentences within a single case, the court there stated we will aggregate these sentences within a single offense or within a single course of conduct, and that would be in paragraph 8. So you've sort of answered my question. You're saying that this isn't really the same as any of those cases because the mandatory – well, first of all, your argument is 45 is not de facto life, but we don't aggregate the 45 with the 20 in this case because they don't arise out of a single set of whatever language. A single course of conduct, correct. Exactly, and the reason that would be because in this case not only are they different courses of conduct, but the second crime is committed when he is an adult. So then you're going to have a juvenile offender who absconds from the court's jurisdiction, commits a second crime as an adult, get greater protections under the Eighth Amendment than juveniles who don't. It's not there to protect recidivist defendants who commit horrible crimes, give them greater protections. These are the exact kind of people that we need to impose harsher sentences on. But was this juvenile ever really looked at in the way that Miller and Roper and even our own cases talk about in terms of the fact that when he did commit the murder, he was 15? And you're talking about the 45-year sentence only? Yes, the court did. No, just the general principle that when he committed this offense, there was no Miller, there was no Roper, and there wasn't any notion that a juvenile should be looked at a little differently than a 25-year-old who would have committed this. And I would say in this case, yes, the court did consider his age and youth attendance circumstances. In the respects that the court had two PSIs, the court reconciled them. And whenever there was a discrepancy between the two PSIs, they were always reconciled in the favor of the defendant, noting that they were prepared at different times in his life and giving him the benefit each and every time. But, you know, isn't there something radically wrong with the system where a 15-year-old today not only doesn't even have an automatic transfer, correct, for a murder? Correct. Okay. But also the mandatory add-on isn't necessarily applied to that same juvenile. And yet, because of the time frame, and I know this is, you know, going off a field, but because of the time frame, this particular juvenile isn't getting the benefit of any of that. And if you were to hold that he should, then every juvenile would have to be resentenced. And this court itself has stated that we are not saying that every juvenile needs to be resentenced to get the benefits of these new laws. The only one that would really apply here would be that firearm add-on would be discretionary. The only one. Yes. And in this case, the court made it perfectly clear that she was merciful in giving the sentence, which was. Well, she said she was. She was. I mean, she said she was being merciful. Correct. That he deserved more than the 45 years that she was giving him. And so it would not make a difference if that firearm was discretionary because she believed he deserved more for the shooting in this case. And she gave him that break because she realized the 20-year would run consecutive to this one. And we see that. What can you tell us, if you can, about that? You said she reconciled the two PSIs. So what did the other PSI reveal? There were certain things like how many children do you have, how far in school did you get. There were various inconsistencies. And whenever there was an inconsistency, she dove into it, she asked about it, she wanted to make sure she had correct information, and she accepted whatever the answer was today, at that time when she was sentencing, that was to the benefit of the defendant. Is there anything that you can tell us about the 20-year earlier, the sentence of the 20 years for the attempt murder? There is nothing on the record other than he got the 20 years, and that's going to be served at 85 percent. Okay, so he is going to be serving 85 percent of the 20. And then on the 45, he's serving 100 percent. Correct. Okay. So it would be a total of 62 years for the two combined, which should not be combined for this analysis at all. Okay, so it's 62 years actually for the 20 plus 45. Correct. So he's going to do 62 years. Correct. Added to 15. Correct. But you're saying they shouldn't be combined. They shouldn't be combined, and the calculation of the time within the brief itself, defense brief itself is a little off because they're not starting the calculation for the age of release until a later date than 15. It's the state's position he shouldn't get the benefit of having that calculation started at a later time because he absconded from the jurisdiction. He committed a second crime that went to trial first. He received a 45-year sentence. He was eligible for release at age 60. There is not a single case that has found that that is a de facto life. In addition, it doesn't violate the proportion penalty clause because when you look at this offender, this crime, and what happened here, we do not have the least culpable offender. We have the lone shooter. We have the shooter who planned this offense. He looked for a gun in the morning, and he shot at night. He planned it. Is that the recanting witness? Is that the only recanting witness? That's- They said he came in and was looking for a gun. Correct. Correct. No one else recanted. There was one who kind of gave a partial, one of the eyewitnesses who gave a partial recantation, if that's what you want to call it. He never stated that he did not identify Petitioner. He just stated that when he went to the show up, he was very nervous. Oh. All right. He was upset about his friend being killed. But he never specifically stated that he did not identify Petitioner. Well, why shouldn't we consider the 45 years when- why shouldn't we consider that with the 20? Because it had to be consecutive. So, I mean, and now we're looking back in hindsight, but it had to be consecutive to the 20. So why shouldn't we consider the 65? Reyes speaks of single course of conduct. The second offense was committed as an adult, and you're rewarding recidivist offenders who abscond from the jurisdiction who are getting greater protections under the Eighth Amendment than other juveniles. Those are three reasons why you should not. Okay. And what about the 45? What's the difference between 45 and 50? Isn't it really the mandatory add-on that's, you know, making every murder a 45-year sentence regardless of the facts? Correct. Correct. Why shouldn't we consider the 45 a de facto life? So the cases speak not just to the term of years, but also the age of release as to whether it's de facto life. And in this case, he was eligible for release at age 60. But he really isn't, is he? He was. He was? But what is the actual date of release? Those are based on factors that are not part of this case and should not be considered a part of it. So that's your position very strongly. Very strongly. That the date of release should be measured from the 45 years and nothing else. Correct. Because that is what we have under review here is 45-year sentence. And what he did when he absconded from the court's jurisdiction and what he did as an adult should not somehow be attached to this juvenile sentence. And so at the age of 60, the cases talk about an opportunity for release. Well, okay. But how do we know, though, that there really any of these things were considered or should be because when the court had to give this sentence of 45, it in reality worked out to, I mean, would you disagree that 65 years might be a de facto life? When someone's already 15 and they're going to get out when they're 80? That would be higher. Or 78, 75? Yes. There are cases here in the first district that would say that that is de facto life. But they didn't have this other tack on it, so to speak. You know, they didn't have, there isn't a factual case like this. Exactly. All right. But why shouldn't we look at that when that's the reality? Because it was a wholly separate crime. And recidivist offenders shouldn't be getting a benefit when they're the exact type of offender that should be punished more harshly. But the fact of the matter is that when he committed the murder, he was only 15. And that is the sentence that we are looking at. It seems to be a circular argument. It is the state's position that this court should not look at an adult offense and the sentence imposed on that and attach it to this juvenile sentence to decide whether this juvenile sentence was de facto life. As to the first issue that has to do with the alibi witness. Let me ask you one question before you get into that. Sure. What would be his date of actual release under the circumstances? Well, I'm not sure about that. And because the attempt murder is 85 percent, the calculation in the defense brief from the IDLC website stated that he would be released at the age of 83, which suggests to me that he's not getting his credit for the 85 percent. So it's very difficult to calculate exactly when he'd be released because we don't know if he's going to have to spend every day of the 20 years. That's dependent on his behavior in jail. But when the United States Supreme Court decided this issue some time ago, they didn't specify, as you are arguing, that it should be confined to one offense. The United States Supreme Court did not because each of the cases that they were considering only dealt with one offense or a single-courting conduct. The law that they used talked about the minor and the fact that it would be a life sentence if he would not be able to get out to eat. They didn't talk about the fact that it should be confined to one offense. You know, as you are arguing. Correct, because factually that's what was before them. However, the Reyes Court made it a point of stating that they were going to aggregate sentences for a single offense or offense within a single course of conduct. And by using that language, they have spoken that you do not get to aggregate sentences from crimes that were not part of that course of conduct. As to the alibi witness, counsel was not deficient here for not calling this witness. She would have injected defendant's gang status into this case where counsel had effectively kept that out. While the motive, perhaps, was to get members of a gang, it was because he believed they dented his car. It was not about a gang shooting. But if he had called this witness, this witness would have injected evidence of defendant's gang status. And that was a strategic decision and a decision that defendant participated in, but now wants to undermine through his post-conviction petition. His instinct was correct. There was no new information in her affidavit that was on top of what the defendant had already told his counsel, that he was at 99th and Ewing at a junta, a gang meeting. And so it did not matter whether he investigated her further or not, based on the record we have before us, because, like I said, his instincts about this witness and the potential damage she would do to this case was reasonable, especially where her own alibi testimony would have been very weak. She did not know the defendant. She had never seen him before, but stated that she saw him across the street at a junta at 99th and Ewing between 9 and 1030. But we know that she could not have seen him between 9 and 1030 because he had been arrested at 1020. In the defense brief, they state, well, that's only off by 10 minutes. However, who's to say that she was off by 10 minutes at 920 when he was out shooting at the victim in this case? Her testimony, her alibi testimony would have been weak. It was reasonable for him to reject that and not call. And because you cannot establish that counsel here was ineffective, the court properly dismissed this petition at the second stage of the proceedings. Unless this court has any other questions, people ask that you affirm the second stage dismissal of the post-conviction petition. All right. Thank you. Mr. McHenry? Aye. Rebuttal? I'll begin in the order that it was just argued with the second issue, the de facto natural life. First, just to clarify, opposing counsel said that there have been no cases that have found a 45-year sentence to be de facto natural life. That's false. In People v. Reyes, the Illinois Supreme Court cited favorably. The Wyoming Supreme Court would tell that a 45-year sentence was, in fact, de facto natural life. Well, is that the – do you know the name of that case? Yeah, it's Bexar v. State. Do you know what the facts of that case are? I know that ultimately – I don't know all the facts, but I know ultimately that they found it to be a 45-year sentence to be de facto natural life. And it's also the case that other jurisdictions – Yeah. It's really factually distinct. And I can't recite the facts for you offhand right now, but it's completely different than any of the other cases that we're talking about. Right. But it was cited by the Illinois Supreme Court. Yes. It supported the idea that a 45-year sentence was de facto natural life. I mean, that was what the parenthetical in Reyes – I think they were talking about the case in the – just sort of along the lines that a number of years can be a de facto life. Right. And that one, it was 45 years in that case. What about the – Ms. Mahoney's statement that in Reyes, they said we're going to measure whether something is de facto based on – will aggregate, but only for a single offense? I think that ultimately I believe that Your Honor's response is correct, that this is factually a different case than certainly what was at issue in Reyes. And in this case, you know, here the trial court at sentencing clearly acknowledged this consecutive sentence. So even though it was out of a different set of events and course of conduct, it was clearly relied upon by the sentencing court in opposing this sentence. Well, no, she had to impose a consecutive sentence. Right. And also used it as – But Reyes kind of suggests something different than what you're arguing, doesn't it? My argument, though, would be that – Forty-five is de facto, right? You're taking that as your first position. Correct. But as far as the other, you're also arguing that it's de facto with the 20. But does that conflict with Reyes? The language in Reyes, yes, it does talk about the course of conduct. However, I mean, we can just look at the facts of this case to see whether that would be fair here. Here we've got a sentence. This judge, she explained, I am taking into account this 20 years and fashioning this sentence. So for the sentencing court to be able to do that, but now somehow the appellate court should not be able to consider the effect of this other one. I don't think that there's any reason for that. The reality is this is going to affect his update. If anything, she diminished – she decreased the amount based on that, didn't she? She said, I really – She said, I'm just giving you the minimum. I really – Because you're going down because you're already doing 20. Correct. But that doesn't mean that – I mean, obviously, if it went back to resentencing, it could still be fashioned for, you know, I'll give you 35 instead of – you know, the mandatory minimum was 45, so there was no discretion to go any lower. And the court certainly didn't say whether they would have shaved even more time off of that had they known what was going to happen in the law since then. As far as the – just de factoly, as far as, you know, how many people we canted because it affects potentially, you know, that other issue. Are you aware whether Miller and Roper, it was like a first-time offense and that the juvenile was sentenced on mandatory life? I don't want to misspeak about it, but – All right. Yeah. As far as the partial recantation, I mean, what was recanted? There were two witnesses recanted in this case. So one of them recanted that as to what the defendant said that morning, whether he asked for a gun and whether there was a statement made. The other recantation, which the State described as partial, was recanting, you know, I only testified against the defendant because I was mad he was in a rival gang. This was a recantation of the identification. So it's not as – the bit that was partial goes to the heart of the matter of who was the actual shooter. As far as counsel trying to keep evidence of the gang membership out, I mean, ultimately this case is a little different because the defendant wanted, at least at the morning of trial, was still contemplating testifying. So that decision is not counsel's decision. So counsel has to do at least the minimum amount of investigation and preparation so that if my client decides that he wants to testify to this alibi that he gave to police, I'm not going to, you know, hang him out to dry by himself without presenting evidence that would have corroborated this otherwise uncorroborated defense. That sort of strategy has been held to be ineffective by this Court and others. With that said, as far as the timing of it, whether the affidavit was 10 minutes off, the State's own witnesses were off as far as when the shooting occurred. They varied from 9 o'clock to 9.30. So if the State is now arguing that this affidavit shouldn't be believed because, I mean, there's no dispute that Lucia Villa is saying that he was at this meeting at the time of the shooting, which occurred somewhere between 9 and 9.30, but the State's saying you should disregard that because the end date or the ending time was 10.30 on her affidavit and it was 10.20, approximately 10.20, to the police officer based on the police officer's report. This 10 minutes, you know, that's a question that should be raised at an evidentiary hearing. But again, this 10-minute discrepancy should not be a reason to excuse counsel's refusal to investigate this defense. Based on these reasons, we'd ask this Court to remand. Thank you. All right. The case was well argued and well briefed, and we will take the matter under advisement. Court is adjourned.